UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

31 PLUS LLC,                                          Case No. DG 08-03444
                                                      Chapter 11
              Debtor.                                 Hon. Scott W. Dales
_____/

OPINION AND ORDER REGARDING SURCHARGE HEARING

PRESENT:   HONORABLE SCOTT W. DALES
           United States Bankruptcy Judge

This matter is before the court after a hearing held on May 7, 2009 (the "Surcharge Hearing") to consider whether to surcharge a creditor's collateral to recover the Chapter 11 trustee's fees and professional expenses.   The surcharge request arose out of the efforts of the Chapter 11 Trustee Colleen M. Olson ("Trustee"), her counsel Paul F. Davidoff, and her accountant A.L. Mitchell ("Accountant"), to sell the premises and business commonly known as "The Barn Restaurant and Bar" at 9104 US Highway 31, West Olive, Michigan (the "Property)". The Property, which the Trustee proposed to sell to Roger DePirro or his assignee (the "Purchaser"), was encumbered by liens in favor of Fifth Third Bank (the "Bank").  The Bank adamantly opposed the Trustee's proposed surcharge.

Looming over the Surcharge Hearing was the fact that the sale of the Property had not closed, and that neither the estate professionals, nor the Bank would receive any benefit from their efforts unless the Trustee and Purchaser consummated the sale. Therefore, the court issued an order on May 11, 2009 stating that it would hold in abeyance any ruling on the Fee Applications (DN 181-83) and related surcharge issues until the sale closed.   An Order

Confirming Sale was entered on May 22, 2009 (DN 209), and on July 15, 2009, the court received a letter from the Bank's counsel requesting that the court issue its ruling regarding the Trustee's request to surcharge the sale proceeds.

The court has previously set forth a detailed account of the facts regarding the Trustee's surcharge request and the testimony at the Surcharge Hearing in its Order Regarding Surcharge Hearing (DN 205). Therefore, the court adopts and incorporates into this Opinion its factual findings in the Order Regarding Surcharge Hearing. The findings in these two orders shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 9014 and 7052.

<u>Reasonableness of Fees</u>

During the Surcharge Hearing, the Bank opposed the professional fees generally,[1] and not just the request to tax them against its collateral. Though the Trustee took some risk in not attending the hearing and offering her testimony, her application nevertheless enjoys a presumption of correctness, "so long as it contains information sufficiently detailed to examine it under the light of § 330(a)'s criteria." <u>In re Kennedy Mfg.</u>, 331 B.R. 744 (Bankr. N.D. Ohio 2005). Although the Bank argued generally against the Trustee's application, it offered no substantive evidence or precise argument to overcome the presumption of correctness. The court has independently reviewed the Trustee's application, and in spite of her default in appearing at the Surcharge Hearing, the court takes no issue with the fees and expenses she seeks to recover. The unusually high travel expenses associated with appointing a Trustee from Traverse City to administer assets in West Olive are the foreseeable result of the United States Trustee's decision

---

[1] The Bank did not challenge the accountant's fees. <u>See</u> Transcript of Proceedings Held on May 7, 2009 (hereinafter "Tr."), at pp. 11-12.

to appoint this particular trustee, a decision this court will not revisit at this late date or in this procedural setting. See Fed. R. Bankr. P. 2020.  The court will approve the Trustee's fees.

As for the Accountant, the Bank's counsel conceded on the record that the Bank does not oppose the Accountant's fees as reasonable or necessary, but opposes only the effort to surcharge these fees against its collateral.   The court has reviewed the Accountant's fee application, finds it meets the requirements of 11 U.S.C. § 330, and will approve it without opposition.

Regarding Mr. Davidoff's fees, his testimony and the court's independent review of his fee application, established his right to fees under 11 U.S.C. § 330, payable from estate assets, if any, at the conclusion of the case.  His fees are reasonable and necessary, especially when viewed from the point in time at which he rendered them.  11 U.S.C. § 330(a)(3)(C).  The court will approve his fees over the Bank's objection.

Surcharge

As part of the sale negotiation, the Trustee and the Bank agreed to carve out of the Bank's collateral $10.000.00 for the unsecured creditors. Mr. Davidoff testified that he attempted several times to negotiate a surcharge for his and the Trustee's professional fees, to no avail. Based upon this admission, the Trustee is precluded from establishing that the Bank impliedly consented to a professional fee surcharge, over and above the $10,000.00 for unsecured creditors, thereby forcing the Trustee to prove that her efforts and the efforts of estate professionals benefited the Property.  See 11 U.S.C. § 506(c); In re Wyckoff, 52 B.R. 164, 167 (Bankr. W.D. Mich. 1985) (trustee must show either creditor consent to surcharge or "direct quantifiable benefit to the secured creditor which enabled him to realize as much or more than he would have by enforcing his own security . . .").

Based upon the testimony at the Surcharge Hearing by the Bank's witness, Allan Thorpe, if the Bank had pursued its Motion to Dismiss, or had otherwise been allowed to consummate the sale outside of bankruptcy, it would have been obligated to pay the state court receiver $15,000.00.  The Bank and its witness propounded that the Trustee's fees should be limited to this amount. This fact also provides support for the Trustee's argument that the sale relieved the Bank of this expense, and thereby provided a benefit, at least to that extent. Beyond this however, the court finds the Trustee failed to meet her burden that there was an absolute and quantifiable benefit to the Bank that would support a surcharge of the Bank's collateral. Had the Bank pursued its Motion to Dismiss, or been allowed to sell the Property outside of bankruptcy at least a year earlier, the testimony showed that it would have been required to pay the receiver's commission of 6% of the sale price, according to Mr. Thorpe.  See Tr. at p. 66, line 18.[2]  If the court allowed the Trustee to tax the collateral as requested, the Trustee's and other professional fees would equal a surcharge of approximately 27% for selling the same property to the same buyer, for less money, more than a year after the sale was initially put together by parties other than the Trustee.  As such, the court finds that the Trustee and her counsel benefitted the Bank's collateral, with respect to disposition, only to the extent agreed to by the Bank -- that of $15,000.00. By permitting the Bank to avoid the expense of disposal, the efforts of the estate professionals conferred a benefit within the meaning of 11 U.S.C. § 506(c).

In addition, the Bank's counsel conceded that Mr. Davidoff's efforts in attending certain hearings in Ottawa County, and in negotiating an easement for access across an adjacent parcel,

_____

[2] Although Mr. Thorpe estimated the benefit at $17,000.00, the court takes judicial notice of the Order Confirming Sale dated May 22, 2009 (DN 209), and notes that the collateral sold for $250,000.00. See Fed. R. Evid. 201.  The estimated benefit, measured at 6% of the sale price, would be $15,000.00.

and in minor other ways, conferred an additional benefit in the amount of $3,674.00. See Tr. at p. 83, line 16. The Trustee may surcharge the collateral for this amount also.

Notwithstanding this ruling, the Bank and its special asset officer should realize that even though the Property is sold, and eventually this Debtor's case will be resolved, and the Bank will either recover or write-off the David Jonassen-related loans, the Trustee, her counsel, and the Bank will inevitably square-off in another dispute over the assets of another failed enterprise. Trustees and counsel are only human, and they might be forgiven if their memory of this matter colors their view of the next. It is unwise to burn bridges, especially in the bankruptcy arena which depends so heavily on courtesy, cooperation, and compromise.

For their part, the Trustee and her counsel must understand that the Bank and its counsel have obligations to shareholders and clients, respectively -- obligations that may require them to take actions that are unpalatable to all concerned, but that are nevertheless within the scope of their duties. See Tr. at p. 19, lines 15-19.

For its part, the court notes its own obligation to approve reasonable costs of estate administration, but to allocate those costs in accordance with prescribed rules. Here, the court has approved the Trustee and other professional fees, but has determined, based upon 11 U.S.C. § 506(c), that only a portion of those fees and expenses must be shouldered by the Bank's collateral, namely the portion with respect to which the Trustee has met her burden of proof.

Accordingly, the court finds that Trustee has established a right to surcharge the Bank's collateral, or the proceeds thereof, in the amount of $18,674.00. This figure is in addition to the $10,000 carve-out previously negotiated.

31 Plus LLC, Case No. 08-03444

NOW, THEREFORE, IT IS HEREBY ORDERED that on or before September 11, 2009, Trustee's counsel shall submit a proposed order, consistent with this Opinion, approving the fees, but limiting the surcharge to the extent set forth above.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order Regarding Surcharge Hearing pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Paul F. Davidoff, Esq., Colleen M. Olson, Esq., Steven E. Bratschie, Esq., and the United States Trustee.

**IT IS SO ORDERED.**          Scott W. Dales
United States Bankruptcy Judge     **Dated: August 24, 2009**